Opinion Issued November 23, 2005



















   
In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00405-CV




JEFF and ROBYN SHKOLNICK, Appellants

V.

COASTAL FUMIGATORS, INC., d/b/a END-O-PEST, Appellee




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2002-63829




O P I N I O N
          This is an appeal from a summary judgment rendered in favor of appellee,
Coastal Fumigators, Inc. d/b/a End-O-Pest (“Coastal”). Appellants, Jeff and Robyn
Shkolnick (“the Shkolnicks”), filed a suit for damages arising out of an inspection by
Coastal of a house that they were, at the time, in the process of purchasing. Coastal
filed a traditional and no-evidence motion for summary judgment, which the court
granted. In two issues, the Shkolnicks contend that the trial court erred in (1) entering
final judgment disposing of all their claims because one of their claims brought under
the Deceptive Trade Practices Act (“DTPA”) was not presented in Coastal’s motion
for summary judgment and (2) granting summary judgment because there was an
issue of material fact as to Coastal’s alleged representations concerning the
characteristics and quality of its services. We affirm.
BACKGROUND
          On May 4, 2000, the Shkolnicks entered into an earnest money contract to
purchase a house located at 411 Trails Court, Houston, Texas. On May 9, 2000,
Coastal sent an employee, Chuck Domel, to perform a Real Estate Transaction
Inspection to inspect the house for wood-destroying insects.


 According to Jeff
Shkolnick, after the inspection, Domel told him that he did not see any problems, he
thought everything was good, and there was nothing to be concerned about. Coastal
provided the Shkolnicks with a Texas Official Wood Destroying Insect Report
(“WDIR”), which stated that the scope of the inspection was limited to “those parts
of the structure(s) that are visible and accessible at the time of the inspection.” The
report found no visible evidence of drywood termite infestation. Shortly thereafter,
the Shkolnicks completed their purchase of the house.
           In the spring of 2002, a handyman, hired by the Shkolnicks, discovered
termites upon removing wood from a windowsill. In May 2002, a pest control
company confirmed the presence of drywood termites.
          The Shkolnicks sued Coastal for violations of the DTPA.


 The Shkolnicks
alleged that Coastal violated the DTPA when it “represented that its services had
characteristics and qualities it did not.”


 Coastal moved for a traditional and a no-evidence summary judgment on all of the Shkolnicks’ claims. In its motion, Coastal
claimed that there was no material fact issue as to whether Coastal made any false
representations to the Shkolnicks. The trial court granted Coastal’s motion for
summary judgment. On February 20, 2004, the trial court rendered a take-nothing
judgment against the Shkolnicks. This appeal followed. 
SUMMARY JUDGMENT
          In their first issue, the Shkolnicks contend that the trial court erred in entering 
a final judgment against them because one of their DTPA claims was not presented
in Coastal’s motion for summary judgment. The Shkolnicks assert that their claim,
under section 17.46(b) of the DTPA, consists of two claims: the first under section
17.46(b)(5) regarding characteristics of Coastal’s services, and the second under
section 17.46(b)(7) regarding the particular quality of Coastal’s services. See Tex.
Bus. & Com. Code Ann. § 17.46(b) (Vernon Supp. 2004-2005). In their second
amended petition, the Shkolnicks alleged, “END-O-PEST has violated the Texas
Deceptive Trade Practices Act and said violations are the producing cause of damages
to JEFF and ROBYN SHKOLNICK. Specifically, END-O-PEST represented that its
services had characteristics and qualities it did not . . . .” Appellants assert the one
reference to “characteristics” in their petition provided sufficient notice to Coastal
that a 17.46(b)(5) claim was asserted as well. The Shkolnicks separate these claims
in their briefs on appeal and argue that Coastal, in its motion for summary judgment,
never challenged the Shkolnicks’ DTPA claim under 17.46(b)(5) regarding Coastal’s
representations that their services had characteristics that they did not have.
          In support of their summary judgment motion, Coastal alleged 
[t]here is no evidence and Plaintiffs have produced no evidence that
Coastal committed a wrongful act. There is no evidence and Plaintiffs
have produced no evidence that Coastal made any false representations
to Plaintiffs regarding the quality of their services in violation of Tex.
Bus. & Com. Code §17.46(b)(7) as alleged above. Further, there is no
evidence and Plaintiffs have produced no evidence that Coastal’s
inspection violated the implied warranty of good and workmanlike
service by failing to perform to industry standards.

 (emphasis added). 
          The issue we are thus presented with is whether Coastal’s reference to “a
wrongful act” sufficiently challenged the Shkolnick’s claim under section 17.46(b)(5)
that Coastal’s services had characteristics that it did not.


 In the summary judgment
motion, Coastal listed the elements that the Shkolnicks had to prove to prevail on
their DTPA claims. One element Coastal listed was that “the defendant committed
a wrongful act, which consisted of the following: (a) a false, misleading, or deceptive
act or practice that is specifically enumerated in the ‘laundry list’ of Business &
Commerce Code section 17.46(b) and that was relied on by the plaintiffs to the
plaintiffs detriment . . . .” Coastal’s use of the phrase “a wrongful act” encompassed
any “act or practice that is specifically enumerated” as a laundry list violation. When
Coastal asserted in their motion that “[t]here is no evidence and Plaintiffs have
produced no evidence that Coastal committed a wrongful act” and that the “claims
fail as a matter of law because Coastal can disprove the element that defendant
committed a wrongful act,” these challenged both the section 17.46(b)(5) and section
17.46(b)(7) claims. 
          We next consider whether these statements sufficiently stated the grounds upon
which summary judgment may be granted. The term “grounds” refers to the reasons
entitling the movant to summary judgment. McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 339 n.2 (Tex. 1993). Grounds for summary judgment may be stated
concisely, without detail and argument. Molina v. Kelco Tool & Die, Inc., 904
S.W.2d 857, 861 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Here, Coastal
stated concisely that they were entitled to summary judgment because they did not
commit a wrongful act, that is they did not violate any laundry list provisions of the
DTPA. Because we conclude that Coastal addressed both the section 17.46(b)(5) and
section 17.46(b)(7) claims in the motion for summary judgment, we overrule the
Shkolnick’s first issue.
SUMMARY JUDGMENT EVIDENCE
          In their second issue, the Shkolnicks contend that the trial court erred in
granting summary judgment because there was an issue of material fact regarding the
section 17.46(b)(5) and section 17.46(b)(7) claims. Specifically, the Shkolnicks
argue that Coastal represented that its services had characteristics and qualities it did
not, including (1) that it could locate an active infestation; (2) that there was no active
infestation; (3) that its inspection would use industry tools; (4) that its inspection
would use industry standards; (5) that its inspection would meet industry standards;
and (6) that its inspection would be complete.
Standard of Review
          A party moving for a traditional summary judgment has the burden of proving
that there is no genuine issue of material fact and that the movant is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt., 690
S.W.2d 546, 548 (Tex. 1985); Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663,
670 (Tex. App.—Houston [1st Dist.] 1996, no writ). When deciding whether there
is a disputed material fact issue precluding summary judgment, evidence favorable
to the non-movant will be taken as true. Nixon, 690 S.W.2d. at 548-49. Every
reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. Id. at 549.
          In a no-evidence motion for summary judgment, the movant must specifically
state the elements as to which there is no evidence. Tex. R. Civ. P. 166a(i). The
burden then shifts to the non-movant to produce evidence that raises a fact issue on
the challenged elements. Id. When reviewing the grant of a no-evidence summary
judgment, we assume all evidence favorable to the non-movant is true and indulge
every reasonable inference and resolve all doubts in favor of the non-movant. 
Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830,
834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). A no-evidence summary
judgment may not be properly granted if the non-movant brings forth more than a
scintilla of evidence to raise a genuine issue of material fact. Tex. R. Civ. P. 166a(i). 
“Less than a scintilla of evidence exists when the evidence is ‘so weak as to do no
more than create a mere surmise or suspicion’ of a fact.” King Ranch v. Chapman,
118 S.W.3d 742, 751 (Tex. 2003) (quoting Kindred v. Con/Chem. Inc., 650 S.W.2d
61, 63 (Tex. 1983)). More than a scintilla of evidence exists if it would allow
reasonable and fair minded people to differ in their conclusions. Id.
          The elements of a DTPA claim are (1) the plaintiff is a consumer; (2) the
defendant engaged in a false, misleading, or deceptive act; (3) the consumer relied on
that act to the consumer’s detriment; and (4) the act constituted a producing cause
of the plaintiff’s damages. See Tex. Bus. & Com. Code Ann. §§ 17.46, .50 (Vernon
2002 & Supp. 2004-2005); see Doe v. Boys Clubs of Greater Dallas, Inc., 907
S.W.2d 472, 478 (Tex. 1995). A mere representation that services are of a particular
quality is not enough for a statement to be actionable under the DTPA. See Tex. Bus.
& Com. Code Ann. § 17.46 (Vernon Supp. 2004-2005). Rather, the act must be
false, misleading, or deceptive. Id. For a representation regarding the characteristics
or quality of a defendant’s services to be actionable under section 17.46(b)(5) and
section 17.46(b)(7), the defendant’s representation that its services have
characteristics or a particular quality must be shown that they are not of that
characteristic or quality. Id. §§ 17.46(b)(5), (7). Because Coastal challenged the
false, misleading, or deceptive act in its motion for summary judgment, the
Shkolnicks had to create a fact issue that there was a representation which was false,
misleading, or deceptive. See id. 
Coastal’s Alleged Representation
          We first address whether Coastal made any representations to the Shkolnicks. 
Coastal argues that (1) the Shkolnicks admitted that they had no memory of any oral
representations made by Coastal; (2) any comments made by Coastal inspectors were
merely opinions; and (3) the only written representation made by Coastal, the WDIR,
was not reviewed by the Shkolnicks until after they closed on their house, thereby
precluding their ability to rely on the WDIR to their detriment.


 
          However, the Shkolnicks point to the Coastal inspector’s statements made to
Jeff Shkolnick on the day of the inspection. Jeff Shkolnick testified during his
deposition that the Coastal inspector made express oral representations to him that (a)
he didn’t see any problems, (b) he thought everything was good, and (c) there was
nothing for Shkolnick to be concerned about. The Shkolnicks also allege that Coastal
impliedly represented that Coastal was “competent and capable of inspecting a home
for termites.” Based on the deposition testimony of Jeff Shkolnick regarding
statements by the Coastal inspector, we conclude that there was some evidence to
create a fact issue on whether representations were made to the Shkolnicks.
False, Misleading or Deceptive Representation
          We next address whether Coastal’s representations were false, misleading, or
deceptive. The Shkolnicks complain that Coastal represented (1) that it could locate
an active infestation; (2) that there was no active infestation; (3) that its inspection
would use industry tools; (4) that its inspection would use industry standards; (5) that
its inspection would meet industry standards; and (6) that its inspection would be
complete. To create a fact issue on whether these representations are false,
misleading, or deceptive, the Shkolnicks must first create a fact issue that termites
were present when Coastal inspected the house, and secondly that Coastal’s
inspection failed to meet the industry standards. 
          To create a fact issue regarding the existence of termites in May 2000 during
Coastal’s inspection, the Shkolnicks offer the affidavit of Dr. Ted Granovsky, Ph.D.,
B.C.E. Dr. Granovsky received his Ph.D. in entomology and is a certified urban and
industrial entomologist. Dr. Granovsky states that “[d]rywood termites normally
require 3 to 5 years of time to develop their colonies to the point where they can cause
damage evident in a structure.” He then summarily concludes that “[i]n consideration
of the known biology of drywood termites, the extended time needed to develop their
colonies, the slowness with which damages are caused by drywood termites, it is both
scientifically reasonable and highly probable that the drywood termites in the
Shkolnicks home were both present and evident at the time of the inspection by
Coastal Fumigators, Inc. d/b/a END-O-PEST, and could have been encountered.” 
Given Dr. Granovsky’s educational background and experience, we conclude this was
sufficient to create a fact issue that termites were present at the Shkolnicks in May
2000.
          We next address whether Coastal adhered to the industry standards during the
inspection of the Shkolnick’s house. The Shkolnicks list multiple points in their brief
as evidence to raise a fact issue on whether Coastal failed to adhere to the industry
standard: (1) Structural Pest Control Board Rule section 599.5(a); (2) Structural Pest
Control Board Rule section 599.5(c) states, “The inspector shall describe structure(s)
inspected and include the following . . . inaccessible or obstructed areas;” (3) the
deposition testimony of Chuck Domel, an inspector for Coastal, indicating that
sounding the wood is part of the procedure for inspecting drywood termites; (4)
Domel’s testimony on inspecting only accessible areas unless he thinks there’s a
problem in an area out of his reach; (5) Domel’s testimony on not identifying
everything above 8 feet as an inaccessible area on the WDIR; (6) Theodore
Granovsky’s conclusion in his affidavit that Domel’s lack of use of a ladder in his
inspection of the Shkolnicks’ house indicated the lack of proper equipment and
effective procedures for a thorough and professional inspection for termites; (7)
Domel’s testimony that he never had a ladder; (8) Domel’s testimony that he does not
need a ladder; (9) Domel’s testimony that drywood termite infestations do not only
occur below eight feet on every structure; (10) Domel’s testimony that the eaves on
the Shkolnicks’ house were visually accessible, but that eaves above eight feet and
out of the reach of his mallet are inaccessible; and (11) WDIR indicated that the eaves
were not marked as an “inaccessible” area by Domel.Structural Pest Control Board Regulation section 599.5(a) states the applicable
industry standard regarding inspections. It provides that the “inspection must be
conducted so as to ensure examination of visible accessible areas in accordance with
accepted procedures.” The only evidence offered by the Shkolnicks to suggest
Coastal did not adhere to this standard is the affidavit of Dr. Granovsky. Dr.
Granovsky states “the inspector DID NOT utilize a ladder during his inspection of the
property in question directly indicates the lack of proper equipment and effective
procedures needed for a complete, thorough and professional inspection of the
structure for termites.” No where does Dr. Granovsky indicate the inspection failed
to meet industry standards. Structural Pest Control Board Regulation section 599.5(a)
requires the inspection to examine “visible accessible areas in accordance with
accepted procedures.” Dr. Granovsky did not state that having a ladder during a
termite inspection constitutes “accepted procedures,” nor did he explain how having
the ladder would lead to a discovery of termites concealed under a windowsill after
an examination of the “visible accessible areas.” We conclude that the Shkolnicks
fall short of providing more than a scintilla of evidence that Coastal failed to adhere
to industry standards.
          Assuming without deciding that Coastal had not performed their inspection in
accordance with industry standards, the Shkolnicks did not present evidence that even
if the termites that were found in their home in the spring of 2002 were present in
May 2000 when Coastal performed its inspection, the termites would have been
discovered by Coastal had it conducted its investigation in accordance with industry
standards. The Shkolnicks discovered the termite damage only after wood was
removed from a windowsill. Without evidence indicating that Coastal should have
known of the presence of the termites in May 2000 by an examination of visible and
accessible areas, the Coastal inspector’s comments that “he didn’t see any problems,”
“he thought everything was good,” and “there was nothing to be concerned about,”
do not support the element of a wrongful act by Coastal, that is a false, misleading,
or deceptive act.
          Considering the evidence in the light most favorable to the Shkolnicks, we hold
that there is no evidence to raise an issue of fact that Coastal made false, misleading
or deceptive representations that its services had characteristics and qualities that they
did not. Because the Shkolnicks would carry the burden of proving these
misrepresentations at trial, but failed to produce more than a scintilla of evidence on
that element in response to Coastal’s traditional and no-evidence motion for summary
judgment, the trial court properly granted Coastal’s motion for summary judgment. 
Accordingly, we overrule the Shkolnicks’ second issue.CONCLUSION
          We affirm the judgment of the trial court. 
 
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.