**BOSTROM SEATING, INC., Petitioner,**

v.

**CRANE CARRIER COMPANY, Respondent.**

No. 02–1047.

Supreme Court of Texas.

Argued Jan. 14, 2004.

Decided June 11, 2004.

Rehearing Denied Sept. 3, 2004.

---

Clay E. Coalson, Robert J. Sigler, Donnell & Abernethy, Corpus Christi, TX, for Petitioner.

Evelyn T. Ailts (Derrington), Brock C. Akers, Rick Gibson, Phillips & Akers, P.C., Houston, TX, for Respondent.

Justice SCHNEIDER delivered the opinion of the Court.

In this products liability case, a manufacturer sought indemnity from a component-part manufacturer. We do not reach the issue of whether or under what circumstances indemnity would be permitted because there is no evidence of a defect in the component part itself. Accordingly, we reverse the court of appeals' decision permitting indemnification. 89 S.W.3d 153.

Dagoberto Gonzales was involved in a rollover accident while driving a garbage truck manufactured by Crane Carrier Co. He suffered head injures, a broken collar bone, and a fractured spine, and brought suit against Crane and Patrick Athey, the driver of another vehicle involved in the accident, for damages resulting from those injuries. Crane then brought third-party actions against component-part manufacturers Bostrom Seating, Inc., the manufacturer of the driver's seat used in the garbage truck, and Beams Industries, Inc., the manufacturer of the driver's side seat belt, seeking statutory and common-law indemnification. Crane did not seek contribution. The trial court granted a directed verdict for Bostrom and Beams on the issue of indemnity. Because the jury failed to reach a verdict on the claims against Crane and Athey, the trial court declared a mistrial, and it then granted Bostrom's motion for severance.[1]

---

**1.** Although the trial court also granted a directed verdict in favor of Beams, the seat belt manufacturer, Beams did not move to sever

Crane appealed the trial court's directed verdict in favor of Bostrom, arguing that an indemnity action exists for a manufacturer against a component-part manufacturer under both the statute and common law. Crane also argued that legally sufficient evidence was presented at trial to support a finding that Bostrom could be held responsible for defectively designing the seat used in the garbage truck. The court of appeals agreed, holding that the trial court improperly directed the verdict in favor of Bostrom on the issues of both common-law and statutory indemnity. 89 S.W.3d at 157–59.

Bostrom appeals based on two arguments. First, Bostrom argues that Crane may not obtain indemnification from Bostrom because there was no evidence presented to show that Bostrom's seat itself was defective, thereby releasing Bostrom of any liability for the injuries to Gonzales. Second, Bostrom argues that even if we hold that Crane presented some evidence that the Bostrom seat was itself defective, Crane is not entitled to either statutory or common-law indemnification from Bostrom because it does not meet the qualifications required of a party seeking indemnification. Because we agree with Bostrom on the first issue, that neither Crane nor Gonzales presented evidence of a defect within the seat itself, we need not reach the second issue of whether, had there been evidence of a defect, Crane would be entitled to either statutory or common-law indemnification from Bostrom.

■ Although this Court has never itself decided the issue, two of the State's courts of appeals have held that strict liability for component-part manufacturers is limited when the component part is integrated into a larger unit before distribution. *See Davis v. Dresser Indus., Inc.,* 800 S.W.2d 369, 370–71 (Tex.App.-East-

land 1990, writ denied); *Bennett v. Span Indus., Inc.,* 628 S.W.2d 470, 472 (Tex. App.-Texarkana 1981, writ ref'd n.r.e.). Numerous courts outside of Texas have held likewise. *See Cipollone v. Yale Indus. Prods., Inc.,* 202 F.3d 376, 379 (1st Cir.2000); *Port Auth. of N.Y. & N.J. v. Arcadian Corp.,* 189 F.3d 305, 313 (3d Cir.1999); *Childress v. Gresen Mfg. Co.,* 888 F.2d 45, 49 (6th Cir.1989); *Zaza v. Marquess & Nell, Inc.,* 144 N.J. 34, 675 A.2d 620, 634 (1996); *Buonanno v. Colmar Belting Co.,* 733 A.2d 712, 716 (R.I.1999); *Davis v. Komatsu Am. Indus. Corp.,* 42 S.W.3d 34, 43 (Tenn.2001). We agree with these courts that if the component-part manufacturer does not participate in the integration of the component into the finished product, it is not liable for defects in the final product if the component itself is not defective. *See* Restatement (Third) of Torts: Products Liability § 5 (1998); *Cimino v. Raymark Indus., Inc.,* 151 F.3d 297, 334 (5th Cir.1998). *See also* Henderson & Twerski, *The Products Liability Restatement in the Courts: an Initial Assessment,* 27 Wm. Mitchell L.Rev. 7, 23 (2000) ("Section 5 has been enormously influential. It has been cited favorably in a host of cases and is likely to put to rest this vexatious issue."). It is not proper to extend the doctrine of strict liability to the supplier of a component part used in a product according to the design of the product's manufacturer when the injuries are caused by the design of the product itself, rather than by a defect in the component. Therefore, if no evidence exists to indicate that the component part was itself defective, the component-part manufacturer should be relieved of any liability for a design or manufacturing defect in the final product, including any action for indemnification.

the claims against it. Therefore, its claims are not before us.

■ Thus, we turn to the question of whether the evidence presented during trial demonstrated that the seat supplied by Bostrom to Crane was itself defective. In reviewing a directed verdict, we decide whether there is any evidence of probative value to raise an issue of material fact on the question presented. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001) (per curiam).We examine the evidence in the light most favorable to the party suffering the adverse judgment. *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex.2000) (per curiam).

■ The court of appeals held that there was conflicting testimony regarding the alleged defectiveness of the design of the garbage truck and the design of its component parts. 89 S.W.3d at 156–57. Specifically, it pointed to Gonzales's expert witness, John Stilson, who was critical of the Bostrom seat because it failed to keep height retention in a crash sequence, did not have an armrest or headrest and did not have a contoured seat. *Id.* at 157. Important to note, however, is that this "testimony" was actually read by Crane's attorney from a deposition that Mr. Stilson gave prior to the time of trial. The comments were read out of context, and the plaintiff's questioning did not afford Mr. Stilson an opportunity to explain whether those comments were criticizing the seat itself or the seat in the context of the restraint system that Crane designed. Subsequent to Crane's questioning of Mr. Stilson, Bostrom's counsel and Mr. Stilson had the following exchange regarding that prior testimony:

Q. [W]e had gone through the various things about the headrest and the armrest and that type of thing, and I asked you, I said, "Does that same analysis apply to all your criticisms regarding the design defects to the seat, the Bostrom seat in this case; that is, that the seat in and of itself is not defectively

designed but it is defectively designed in terms of the application to which it's being put to in the Crane Carrier vehicle?" And at page 177, line 20, you answered that question. What did you say?

A. I said, "Essentially, yes. The bottom line is that this seat, in some other environment, may function and work perfectly safe, but in this environment it can't . . ."

At trial, Mr. Stilson repeatedly testified that the seat itself was not defective:

Q. Mr. Stilson . . . Do you believe the seat B just the seat in and of itself is defective?

A. No. By itself, no.

Q. In another application used somewhere else, do you think the seat could be okay?

A. Sure. This seat in another application, not the one on this vehicle, could work and perform under many conditions well . . .

In addition to the evidence discussed by the court of appeals, Crane points to expert testimony that says there was "excessive excursion," meaning there was too much movement permitted in the vehicle's restraint system and that the Crane garbage truck as a whole was defective. He testified that there were safer alternatives that could have been used in the vehicle to prevent the kind of injuries sustained by Gonzales. However, this evidence relates to the defectiveness of the vehicle's design and not to the specific seat in question.

The parties agree that Crane designed the garbage truck and chose which seat it would use. None of the evidence cited by Crane could be used to prove that the Bostrom seat, in and of itself, was defective. Even Crane's own attorney, in his opening statement, admitted that "there isn't anything wrong with the seat." At

best, the evidence supports a possible conclusion that using the seat in this specific truck created an allegedly defective restraint system design. Crane was in total control of the design of that system, and Bostrom, playing no part in the design of the truck, cannot be held liable for its possible defectiveness.

Because no evidence was presented to suggest that the Bostrom seat was itself defective, we hold that Crane cannot obtain indemnification from Bostrom. We reverse the court of appeals' decision and render judgment that Crane take nothing from Bostrom.