COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-233-CV

 

 

COMMERCIAL STRUCTURES AND                                          APPELLANT

INTERIORS,
INC.

                                                   V.

 

LIBERTY EDUCATION MINISTRIES, INC.                                   APPELLEES

D/B/A
LIBERTY CHRISTIAN SCHOOL AND

JOHN
FURST

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This summary judgment appeal
involves a dispute arising out of work performed under a construction
contract.  In four issues, appellant
Commercial Structures and Interiors, Inc. (CSI) contends that the trial court
erred by denying its motion to strike appellees Liberty Education Ministries,
Inc. d/b/a Liberty Christian School=s (Liberty) and John Furst=s proffered summary judgment evidence under rule 193.6, that the trial
court erred by construing a Compromise Settlement Agreement and Mutual Release
(Release) between CSI and Northstar Bank of Texas as a transfer and assignment
of CSI=s cause of action against appellees, that the trial court erred by
granting summary judgment dismissing CSI=s claims against Furst based on Liberty=s pleadings without any additional summary judgment proof from Furst,
and that the trial court erred by sustaining appellees= objections to CSI=s proferred summary judgment evidence. 
See Tex. R. Civ. P.
193.6.  We reverse and remand the summary
judgment in favor of Liberty but affirm the summary judgment in favor of Furst.

Background Facts

CSI, as a general contractor,
and Liberty entered into a contract for construction of a school in Denton,
Texas, on January 20, 2004.  Liberty
leased the property on which the school was to be built from Furst.  CSI filed suit against appellees on July 12,
2004, alleging that Liberty terminated the contract after CSI had fully
performed and that Liberty had failed and refused to pay CSI $522,178.57 that
was due under the contract.  CSI also
claimed to have perfected a mechanic=s lien on the property. 













Appellees answered by filing
a general denial, verified special denial, and special exceptions.[1]  Six months later, Northstar Bank, who was not
a party to the suit, filed an unsworn notice of transfer of causes of action
under section 12.014 of the property code in which it claimed that CSI had
transferred its Acauses of
action@ against appellees pursuant to the Release.  See Tex.
Prop. Code Ann. ' 12.014
(Vernon 2004).[2]  CSI objected to the notice, contending, in
part, that it had no intent to transfer its claims against appellees to
Northstar Bank.  Appellees then filed an
amended answer, which included a counterclaim requesting a declaratory judgment
that Northstar Bank Ais the legal
owner of the claims . . . CSI[] has asserted . . . for payment of amounts
claimed to be due under the construction contract.@[3]  Appellees claimed that
pursuant to the Release, CSI had transferred and assigned all legal rights and
causes of action against appellees to Northstar Bank and that Northstar Bank
was the owner of all claims and causes of action with the right to compromise,
settle, and dismiss those causes of action and release any and all liens on the
real property that had been asserted by CSI.








Appellees also moved for
summary judgment on all of CSI=s claims against them, alleging that (1) CSI lacked standing to bring
suit on the claims against Liberty because it had already transferred and
assigned them to Northstar Bank[4]
and (2) Furst had no liability to CSI because he was not a party to the
contract with Liberty and CSI did not allege any other theory under which he
could be liable to it.  They also asked
that the court grant them summary judgment on their counterclaim for declaratory
relief.  As summary judgment proof,
appellees attached to their motion the following:  (1) an affidavit from Brent Thornton, Senior
Vice President of Northstar Bank, averring that CSI had assigned its claims
against appellees to Northstar Bank in the Release; (2) the Release; (3) an
affidavit from Rob Gentry, Chairman of the Board of Northstar Bank, averring
that the bank, as the assignee of CSI=s accounts receivable, had agreed to settle CSI=s claims against Liberty for $200,000; and (4) a Compromise Settlement
Agreement between Northstar Bank and Liberty, purporting to settle CSI=s claims against Liberty for $200,000.

On March 31, 2005, the trial
court granted appellees= motion for
summary judgment, dismissing CSI=s claims against appellees and declaring that CSI had 

transferred
all legal rights and causes of action asserted by CSI in this litigation to
Northstar and Northstar is the owner of all claims asserted by CSI in this
litigation with full right to compromise, settle and dismiss the same and
release any and all liens upon real property asserted by CSI in this
proceeding, including the claimed mechanic=s and materialmen=s
liens upon the real property on which CSI seeks foreclosure in this proceeding.


 

Analysis








In its first issue, CSI
contends that the trial court erred by failing to strike the affidavits of two
Northstar Bank employees that appellees attached as evidence to their summary
judgment motion because appellees did not supplement their discovery responses
with the names of those employees.  More
specifically, CSI had propounded interrogatories to appellees, asking that
appellees Aidentify all
persons having knowledge, either directly or indirectly, of relevant facts and
circumstances concerning the issues, claims, and defenses in this lawsuit, and
for each person identified, describe the facts as authorized under rule
192.3(c) and (h)@ and to Adescribe in detail any and all facts which would support your
affirmative defenses in this action.@  In responding to the first
interrogatory, appellees gave only the names of employees related to Liberty;
they did not give the names of the Northstar Bank employees whose affidavits
were attached as evidence to their summary judgment motion.  In addition, they did not answer the second
interrogatory, but instead objected under rule 195.1, claiming that this
question was an impermissible form of expert discovery.  Tex.
R. Civ. P. 195.1.  They also
referred CSI to their response to its eleventh Request for Production Adated December 24, 2004.@  CSI claims that appellees did
not produce any documents.[5]

Rule 193.6 prohibits a party
from offering evidence that was not disclosed Ain a timely manner@ in a discovery response Aunless the court finds that: 
(1) there was good cause for the failure to timely make, amend, or
supplement the discovery response; or (2) the failure to timely make, amend, or
supplement the discovery response will not unfairly surprise or unfairly
prejudice the other parties.@  Tex. R. Civ. P. 193.6(a); Barr v. AAA Tex., LLC, 167
S.W.3d 32, 37 (Tex. App.CWaco 2005,
no pet.).  The party seeking to offer the
evidence at issue has the burden to establish good cause or lack of unfair
surprise or prejudice.  Tex. R. Civ. P. 193.6(b); Barr,
167 S.W.3d at 37.








The parties dispute whether
the rule 193.6 exclusionary rule applies to summary judgment proceedings.  There appears to be a split of authority
among the courts of appeals on this issue. 
Compare Cunningham v. Columbia/St. David=s Healthcare Sys., L.P., 185 S.W.3d
7, 12-13 (Tex. App.CAustin 2005,
no pet.), and F.W. Indus., Inc. v. McKeehan, No. 11-04-00053-CV, 2005 WL
1639078, at *3 (Tex. App.CEastland
July 14, 2005, no pet.), with Johnson v. Fuselier, 83 S.W.3d 892, 897
(Tex. App.CTexarkana
2002, no pet.), and Alaniz v. Hoyt, 105 S.W.3d 330, 340 (Tex.
App.CCorpus Christi 2003, no pet.).  








However, even if the
exclusionary rule applies here, appellees have shown that CSI was not unfairly
surprised or prejudiced by the evidence. 
Rule 193.5 requires that A[a]n amended or supplemental response must be made reasonably promptly
after the party discovers the necessity for such a response.  Except as otherwise provided by these rules,
it is presumed that an amended or supplemental response made less than 30 days
before trial was not made reasonably promptly.@  Tex. R. Civ. P. 193.5(b). 
Northstar Bank filed its Notice of Transfer on January 25, 2005.  Appellees served their summary judgment
motion and evidence on CSI on February 15, 2005, forty-one days before the
hearing on the motion.  Thus, CSI was
aware of appellees= intentions
to rely on the affidavits as summary judgment evidence before the less than
thirty-day untimely presumption in rule 193.5. 
Tex. R. Civ. P. 193.5; see
Wigfall v. Tex. Dep=t of Criminal Justice, 137 S.W.3d
268, 273 (Tex. App.CHouston [1st
Dist.] 2004, no pet.).  We conclude that
the trial court did not abuse its discretion by refusing to strike appellees= summary judgment evidence because of Liberty=s failure to supplement its discovery responses.  See Tex.
R. Civ. P. 193.6(a)(2).

CSI also appears to argue
that appellees were precluded from relying on the affidavits as summary
judgment evidence because the trial court had signed an order to quash
appellees= Notice to
Produce documents directed to Northstar Bank. 
But appellees did not have to obtain the Release upon which they relied
from the Notice to Produce.  Northstar
Bank had already filed a ANotice of
Transfer of Causes of Action Pursuant to Tex. Prop. Code Section 12.014,@ with the Release attached.  Tex. Prop. Code Ann. ' 12.014; see S.W. Bell Tel. Co. v. Mktg. on Hold, Inc., 170
S.W.3d 814, 824-25 (Tex. App.CCorpus Christi 2005, pet. filed) (describing purpose of statute as Aone of notice@ and
concluding that timing of assignment, i.e., whether before or after suit filed,
is irrelevant).  Thus, the trial court
did not abuse its discretion by refusing to strike the affidavits on this basis
either.  We overrule CSI=s first issue.








In its second issue, CSI
contends that the trial court erred by construing the Release as a present
transfer and assignment of CSI=s claims against appellees to Northstar Bank because the Release
merely evidences a future intent to assign by executing additional documents,
that the term Aaccounts
receivable@ was not
intended to apply to any causes of action it had against appellees, and that
CSI=s officers specifically informed Northstar Bank that CSI intended to
file a civil action against appellees and that CSI would not assign it.








In construing a written
assignment, an appellate court applies the rules of interpretation and
construction applicable to contracts.  MG
Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc., 179 S.W.3d 51, 58
(Tex. App.CSan Antonio
2005, pet. denied).  Our primary goal is
to ascertain the intent of the parties as it is expressed in the written
assignment.  See Forbau v. Aetna Life
Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994) (op. on reh=g); MG Bldg. Materials, 179 S.W.3d at 58.  When an appellate court concludes that
contract language can be given a certain or definite meaning, then the language
is not ambiguous, and the appellate court is obligated to interpret the
contract as a matter of law.  DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999); Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). 
A contract is not ambiguous merely because parties to an agreement have
different interpretations of a term or phrase. 
DeWitt, 1 S.W.3d at 100; Forbau, 876 S.W.2d at 134.  A contract is ambiguous only if, after the
application of established rules of construction, an agreement is still
susceptible to more than one reasonable meaning.  DeWitt, 1 S.W.3d at 100; Columbia
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.
1996);  Loaiza v. Loaiza, 130
S.W.3d 894, 905 (Tex. App.CFort Worth 2004, no pet.); Cano v. N. Tex. Nephrology Assocs.,
P.A., 99 S.W.3d 330, 336 (Tex. App.CFort Worth 2003, no pet.). 

In construing an unambiguous
contract, a court should attempt to harmonize and give effect to all provisions
so that none is rendered meaningless.  MCI
Telecomms. Corp. v. Tex. Util. Elec. Co., 995 S.W.2d 647, 650‑51
(Tex. 1999); Coker, 650 S.W.2d at 393. 

Thus, before we may look to
any evidence about CSI=s intentions
regarding the quoted language, we must first determine from the face of the
Release whether it indicates a present intention to assign and transfer all of
CSI=s accounts receivable and, if so, whether the accrued but not filed
causes of action against appellees are included within the term Aaccounts receivable.@ 








An assignment generally
transfers some right or interest from one person to another.  MG Bldg. Materials, 179 S.W.3d at
58.  AAn assignment of a right is a manifestation of the assignor=s intention to transfer it by virtue of which the assignor=s right to performance by the obligor is
extinguished . . . and the assignee acquires a right to such
performance.@  Restatement
(Second) of Contracts ' 317(1) (1981).  An assignment
is construed to have been made when the owner of a right manifests its
intention to transfer the right to an assignee; an assignment is the act
by which a transfer is effected.  Miller
v. Bank of the West, No. 01-88-00195-CV, 1988 WL 88320, at *2 (Tex. App.CHouston [1st Dist.] Aug. 25, 1988, no writ) (not designated for
publication). 

CSI and the bank entered into
the Release on May 27, 2004, before CSI filed its suit against appellees.  At that time, as stated in the Background
section of the Release, CSI and other entities associated with CSI (together
with CSI, the West Entities) were indebted to Northstar Bank under promissory
notes that were in default.  CSI and the
West Entities entered into the Release to avoid foreclosure on property that
secured some of the notes.

The first paragraph of the
Release provides as follows:

The West Entities agree to convey or cause to
be conveyed to [Northstar] Bank absolutely and free of any right of
redemption or any other right or interest of the West Entities . . . all of the
land situated in Denton County, Texas, described in the Schedule >A,=
attached hereto . . . .  Further, CSI agrees
to assign to the Bank all of its right, title and interest in and to all of
its accounts receivable and all rights to payment of any kind.  [Emphasis added.] 

 








The parties= use of the terms Aagree to convey or cause to be conveyed@ in the first sentence of this paragraph indicates that additional
instruments may have been necessary to convey the real property described in
the Release.  The second sentence contains
the same initial phrase, Aagrees to
assign,@ but does not contain the Acause to be conveyed@ language that more clearly reinforces the conclusion that the parties
intended to execute additional documents. 
However, the phrases Aagree to convey@ and Aagrees to assign@ by
themselves indicate a future, or prospective, intent to convey and assign
rather than a present intention.  See
Chambers County v. TSP Dev., Ltd., 63 S.W.3d 835, 839 (Tex. App.CHouston [14th Dist.] 2001, pet. denied); Seelbach v. Clubb, 7
S.W.3d 749, 756 (Tex. App.CTexarkana 1999, pet. denied); see also Allodial Ltd. P=ship v. N. Tex. Tollway Auth., 176 S.W.3d
680, 683 (Tex. App.CDallas 2005,
pet. denied) (holding that provision indicating that party Ashall assign over to Allodial all rights@ due from causes of action did not effect a present assignment of
those rights).








The second paragraph of the
Release, entitled Consideration, begins, ASubject to the satisfaction by the West Entities of the conditions
contained herein, the Bank agrees to accept the conveyance of the Properties in
full, final and complete settlement of any and all claims relating to personal
liability of the West Entities with respect to@ their indebtedness to the bank. 
Additionally, another provision of the Release states that A[t]he transactions contemplated by this agreement will be
consummated on or before 5:00 P.M. on Thursday, May 27, 2004.@  That provision is followed by
a section entitled Conveyance Documents, which provides that at the closing,
the West Entities Awill deliver or cause to be delivered@ a special warranty deed for the real property referenced above, an
assignment of life insurance policies in a form attached to the Release, a
notice letter to CSI=s account
debtors,[6]
and Asuch other conveyance documents as might be reasonably requested by
[Northstar] Bank to transfer absolute ownership of all of the property
interests@
contemplated in the Release.  [Emphasis
added.]  Thus, other provisions of the
Release appear to contemplate a closing at which the parties would consummate
all of the transactions agreed to in the Release, including the assignment of
CSI=s accounts receivable to Northstar Bank.








We hold that the language in
the Release unambiguously[7]
evidences an intent to assign CSI=s accounts receivable to Northstar Bank in the future and does not,
standing alone, effect a present transfer of the accounts receivable to the
bank.  Appellees did not provide the
trial court with any evidence that the parties consummated the transactions
contemplated in the Release, nor did they plead or prove an equitable
assignment;[8]
thus, there is no evidence that CSI ever completed the assignment of its
accounts receivable to Northstar Bank that it agreed to in paragraph 1 of the
Release.  Because there is no evidence in
the summary judgment record that the assignment was ever consummated, the trial
court erred by granting summary judgment in favor of Liberty as to CSI=s claims against it and as to appellees= claims for declaratory judgment relief against CSI.  We sustain CSI=s second issue.

In its third issue, CSI
contends that the trial court erred by dismissing its claims against Furst
because he did not present any summary judgment proof.  Appellee contends that such proof was not
necessary because Furst=s motion for
summary judgment was based on CSI=s pleadings and the judicial admissions contained in those
pleadings.  








CSI pled that it entered into
the contract with Liberty and that Liberty leased the property upon which the
school was to be constructed from Furst. 
It did not allege that it contracted with Furst or that he was a third
party beneficiary of the contract.  Thus,
the only possible theory of liability against Furst was in connection with the
mechanic=s and materialmen=s lien that CSI claimed to have perfected against the property he
owned.

AOur courts
have long held that a mechanic=s and materialmen=s lien attaches to the interest of the person contracting for
construction.@  Diversified Mortgage Investors v. Lloyd D.
Blaylock Gen. Contractors, Inc., 576 S.W.2d 794, 805 (Tex. 1978) (op. on
reh=g).  Therefore, if a lessee
enters into a construction contract, any resulting mechanic=s lien attaches only to the leasehold interest.  Id. 
Unless the owner of the land is also a party to the construction
contract, no mechanic=s lien
attaches to the freehold.  2811
Assocs., Ltd. v. Metroplex Lighting & Elec., 765 S.W.2d 851, 853 (Tex.
App.CDallas 1989, writ denied).








AAssertions
of fact, not [pled] in the alternative, in the live pleadings of a party are
regarded as formal judicial admissions.@  Holy Cross Church of God in
Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001).  Although pleadings generally do not
constitute summary judgment proof, if a plaintiff=s pleadings contain judicial admissions negating a cause of action,
summary judgment may properly be granted on the basis of the pleadings.  See Brooks v. Ctr. for Healthcare Servs.,
981 S.W.2d 279, 283 (Tex. App.CSan Antonio 1998, no pet.).  CSI=s pleadings do not plead any theory upon which CSI could recover from
Furst.  Thus, the trial court did not err
by granting summary judgment in favor of Furst based on the judicial admissions
in CSI=s pleadings.  We overrule CSI=s third issue.

Conclusion

Having
sustained CSI=s second
issue, we reverse the summary judgment in favor of Liberty and remand the case
for further proceedings on CSI=s claims against Liberty.  But
having overruled CSI=s third
issue, we affirm the trial court=s summary judgment in favor of Furst.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED:
April 20, 2006











[1]Appellees
disputed that CSI had fully performed under the contract but did not claim that
Liberty had made any payments under the contract.





[2]Section
12.014 allows an assignee of a cause of action to file a sworn notice of the
assignment in a pending suit so that the assignment will be binding upon the
other parties to the suit.  See id.;
Baroid Equip., Inc. v. Odeco Drilling, Inc., 184 S.W.3d 1, 19 (Tex. App.CHouston
[1st Dist.] 2005, pet. filed).





[3]Appellees
also raised a plea in avoidance, claiming that because CSI had assigned its
claims against appellees to Northstar Bank, it had no standing to pursue the
suit.





[4]After
making a valid assignment, an assignor loses all control over the chose and can
do nothing to defeat the rights of the assignee.  Johnson v. Structured Asset Servs., LLC,
148 S.W.3d 711, 722 (Tex. App.CDallas 2004, no pet.).  An assignor of a cause of action who has not
retained some right or interest in the cause of action is precluded from
bringing suit.  River Consulting, Inc.
v. Sullivan, 848 S.W.2d 165, 169 (Tex. App.CHouston
[1st Dist.] 1992, writ denied), disapproved of on other grounds by Formosa
Plastics Corp. USA v. Presidio Eng=rs & Contractors, Inc., 960
S.W.2d 41, 46 (Tex. 1998).





[5]Appellees
do not dispute CSI=s
contention that they failed to produce documents in response to CSI=s
eleventh request for production.





[6]The
Release states that the form of this letter is attached as Exhibit F, but the
copy of the Release in the record does not contain such an exhibit or letter
form as an attachment.





[7]Because
we have concluded that the language in the Release is unambiguous, we also
overrule CSI=s
fourth issue alleging that the trial court erred by sustaining appellees=
objections to CSI=s
proffered summary judgment evidence that CSI did not intend for the accrued but
unfiled causes of action against appellees to be assigned and transferred to
Northstar Bank in the Release.  Evidence
that CSI did not intend for the causes of action against appellees to be
assigned to Northstar Bank is inadmissible parol evidence; thus, the trial
court did not err by granting appellees= objections to that evidence
on those grounds.  See Nat=l
Union Fire Ins. Co. of Pittsburgh, P.A. v. CBI Indus., Inc., 907
S.W.2d 517, 520 (Tex. 1995).





[8]ATo be
an equitable assignment, the agreement must evidence an intent to transfer the
interest and the transferor must relinquish control over the interest.  An equitable assignment can be effected only
by a surrender of control over the funds or property assigned.@  Pape Equip. Co. v. I.C.S., Inc., 737
S.W.2d 397, 402 (Tex. App.CHouston [14th Dist.] 1987,
writ ref=d
n.r.e.) (emphasis added) (citations omitted).